1  JEROME J. SCHLICHTER (SBN 054513)
   jschlichter@uselaws.com
2  TROY A. DOLES (*admitted pro hac vice*)
   tdoles@uselaws.com
3  NELSON G. WOLF (*admitted pro hac vice*)
   nwolff@uselaws.com
4  JASON P. KELLY (*admitted pro hac vice*)
   jkelly@uselaws.com
5  SCHLICHTER, BOGARD & DENTON
   100 South Fourth Street, Suite 900
6  St Louis, MO 63102
   Telephone:  (314) 621-6115
7  Facsimile:  (314) 621-7151

8  *Lead Counsel for Plaintiffs*

9  WILLIAM A. WHITE (SBN 121681)
   wwhite@hillfarrer.com
10 HILL, FARRER & BURRILL LLP
   One California Plaza, 37th Floor
11 300 South Grand Avenue
   Los Angeles, CA 90071-3147
12 Telephone: (213) 620-0460
   Facsimile:  (213) 620-4840
13
   *Local Counsel for Plaintiffs*
14

15            **UNITED STATES DISTRICT COURT**
16            **CENTRAL DISTRICT OF CALIFORNIA**

17

18 | GLENN TIBBLE, WILLIAM | Case No. CV07-05359 SVW (AGRx) |
   | BAUER, WILLIAM IZRAL, | |
19 | HENRY RUNOWIECKI, | **SECOND AMENDED COMPLAINT** |
   | FREDERICK SUHADOLC, HUGH | **FOR BREACH OF FIDUCIARY** |
20 | TINMAN, JR., individually and as | **DUTY** |
   | representatives of similarly situated | |
21 | persons, and on behalf of the Plan, | |
22 | Plaintiffs, | **JURY TRIAL DEMANDED ON ALL** |
   | | **COUNTS SO TRIABLE** |
23 | v. | |
24 | EDISON INTERNATIONAL, THE | |
   | EDISON INTERNATIONAL | |
25 | BENEFITS COMMITTEE, | |
   | EDISON INTERNATIONAL | |
26 | TRUST INVESTMENT | |
   | COMMITTEE, EDISON | |
27 | INTERNATIONAL TRUST | |
28 | INVESTMENT COMMITTEE | |

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  CHAIRMAN'S SUBCOMITTEE,
   SECRETARY OF THE
2  SOUTHERN CALIFORNIA
   EDISON BENEFITS
3  COMMITTEE, SOUTHERN
   CALIFORNIA EDISON'S VICE
4  PRESIDENT OF HUMAN
   RESOURCES, MANAGER OF
5  SOUTHERN CALIFORNIA
   EDISON'S HR SERVICE
6  CENTER, SOUTHERN
   CALIFORNA EDISON.
7

8              Defendants.

9

10    **SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

11                        **INTRODUCTION**

12        1.    In this action, pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), Plaintiffs and

13    Class Representatives William Izral, William Bauer, Henry Runowiecki, Frederick Suhadloc,

14    Glenn Tibble, and Hugh Tinman, Jr., individually and on behalf of the Edison 401(k) Savings

15    Plan (the "Plan") and similarly situated participants and beneficiaries of the Plan, seek to recover

16    the financial losses suffered by the Plan and to obtain injunctive and other equitable relief for the

17
      Plan from Edison International, Southern California Edison Company, the Plan Sponsor, the
18
      Edison International Benefits Committee, the Southern California Edison Benefits Committee
19
      (the "Committee"), the Plan Administrator, and other defendants identified below (collectively
20
      "Defendants"), based upon breaches of their fiduciary duties.
21

22        2.    As set forth in detail below, Defendants: (A) while assuring participants that
23
      Southern California Edison paid the administrative costs of the Plan, surreptitiously caused such
24
      costs to be assessed against Plan participants' retirement savings; (B) squandered the Plan's
25
      enormous bargaining power, and impaired participants' ability to receive market returns, by
26
      including dozens of actively managed retail mutual funds as plan investment options; (C)
27

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

subjected the Plan to excess and unreasonable fees and expenses collected by, and transferred among, Plan service providers as soft dollars to support undisclosed Revenue Sharing programs; (D) undermined participants' returns in the Edison International Stock Fund by imprudent fund management; (E) failed to employ a prudent process to ensure the appointment of qualified and competent individuals to the committees overseeing the plan; and (F) failed to monitor, among others, the committee members and activities of the Plan itself to ensure compliance their fiduciary obligations.  By this and by other conduct set forth below, Defendants violated their fiduciary obligations under ERISA and caused damages to the Plan.

## PARTIES, JURISDICTION AND VENUE

### Plaintiffs:

3.      Plaintiff and Class Representative William Bauer is a resident of Joliet, Illinois.

4.      Plaintiff and Class Representative William Izral is a resident of Peotone, Illinois.

5.      Plaintiff and Class Representative Henry Runowiecki is a resident of Elgin, Illinois.

6.      Plaintiff and Class Representative Frederick Suhadolc is a resident of Elwood, Illinois.

7.      Plaintiff and Class Representative Glenn Tibble is a resident of Joliet, Illinois.

8.      Plaintiff and Class Representative Hugh Tinman, Jr., is a resident of New Lenox, Illinois.

9.      Each Plaintiff and Class Representative is a participant in the Plan.

10.      Each Plaintiff and Class Representative is a current or former employee of Midwest Generation, which is subsidiary of the Edison Mission Group.  In turn, the Edison Mission Group is a division or subsidiary of Edison International.

- 3 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1        11.    Midwest Generation maintains its headquarters in Chicago, Illinois and operates its

2  power plants in the Chicago area.  Midwest Generation has approximately 1,200 employees.

### Defendants:

12.    Defendant Edison International is an electric power generator and distributor based in Rosemead, California.  Edison International is the parent of Defendant Southern California Edison Company ("SCE").  Upon information and belief, pursuant to ERISA § 3(16)(B), Edison International serves as sponsor of the Plan either directly or through the named Plan Sponsor SCE, and functions as a fiduciary to the Plan through its appointment of individuals, either directly or through SCE, to various committees, and its monitoring of those individuals, committees, and the Plan itself.

13.    Defendant SCE is an investor-owned utility company that provides electricity to retail customers in Southern California.  Upon information and belief, SCE is the Sponsor of the Plan pursuant to ERISA § 3(16)(B), and functions as a fiduciary to the Plan through its appointment of individuals to various committees, and its monitoring of those individuals, committees, and the Plan itself.

14.    In this Complaint, Edison International and Southern California Edison will collectively be referred to as "Edison."

15.    Defendant Southern California Edison Benefits Committee (the "Committee") is a named fiduciary and Plan Administrator.  The Committee is comprised of persons appointed by Southern California Edison's Chief Executive Officer, and serve at his pleasure.  Each Member of the Committee is also a named fiduciary of the Plan.

16.    Defendant the Edison International Trust Investment Committee (the "TIC"), either directly or through the TIC Chairman's Subcommittee, is a named fiduciary of the Plan.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

The TIC is comprised of persons appointed by the Chief Executive Officer of Edison International.  Each Member of the TIC is also a named fiduciary of the Plan.

17.     Defendant the Secretary of the Benefits Committee is a named fiduciary of the Plan.  Pursuant to Edison's June 28, 2006 Form 11-K, in 2005 Mr. Aaron Whitely was the Secretary of the Benefits Committee.

18.     Defendant Southern California Edison's Vice President, Human Resources is a named fiduciary of the Plan.  Pursuant to Edison's Forms 11-K, this position has been held at various times by, among others, Diane Featherstone, Lillian Gorman Frank, John Kelly, Frederick Grigsby, and J. Michael Mendez, who report to, and are appointed by, the CEO of SCE.

19.     Defendant Manager of Southern California Edison's HR Service Center is a named fiduciary of the Plan.  Upon information and belief, this position has been held for certain time periods by Christine DeNatale.

20.     Southern California Edison indemnifies all of the foregoing Defendants, its employees, and members of its Board of Directors, against liability for their conduct as Plan fiduciaries.

**<u>Jurisdiction and Venue:</u>**

21.     Plaintiffs bring this action pursuant to ERISA §§ 502(a)(2) & (3), 29 U.S.C. § 1132(a)(2) & (3), which provide that participants may pursue civil actions individually and on behalf of the Plan for damages to remedy breaches of fiduciary duty as set forth in ERISA § 409, 29 U.S.C. § 1109,  and/or to obtain other appropriate equitable relief.  This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1)(F).

22.     All Defendants are subject to service of process issued from this Court pursuant to 29 U.S.C. § 1132(e)(2).

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

23.     Venue is proper in this Court pursuant to 29 U.S.C. § 1132 (e)(2) because the Plan is administered in this district and the Defendants may be found in this district.

**Rule 23 Requires Class Certification:**

24.     Plaintiffs bring this action individually, pursuant to 29 U.S.C. § 1132(a)(2) and (a)(3), and pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the Plan, themselves and all similarly situated Plan participants and beneficiaries.  The Plan is comprised of a unitary trust corpus in which each Plaintiff, and each Plan participant, has an interest.  Plaintiffs seek to represent the following (the "Class"):

> All persons, *excluding the Defendants, and/or other individuals who are or may be liable for the conduct described in this Complaint,* who were or are participants or beneficiaries of the Plan and who were, are or may have been affected by the conduct set forth in this Complaint, as well as those who will become participants or beneficiaries of the Plan in the future.

25.     Certification of this Class is proper under Rule 23(a) in that:

A. **Numerosity.**  The members of the Class are so numerous that joinder of all members is impracticable.  Although the Plaintiffs do not know the exact number of Class members as of the date of filing, the Plan's public documents state that, at the end of the 2005 Plan year, there were 17,395 participants with account balances in the Plan.

B. **Commonality.** Common issues of fact and law predominate over any issues unique to individual Class members.  Issues that are common to all Class Members include, but are not limited to, whether the Defendants:

> i.      Failed to properly and prudently select plan investment options, made selections for self-interested reasons, and/or abdicated their responsibilities in this regard;

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

ii.    Shifted to the Plan, and its participants and beneficiaries, Edison's obligation to pay the cost of administering the plan including fees and expenses of the trustee and record keeper;

iii.    Squandered the Plan's enormous bargaining leverage in the marketplace by including dozens of retail mutual funds as Plan investment options;

iv.    Denied Plan participants and beneficiaries the opportunity to receive market returns over the long term and on a risk-adjusted basis by including within the plan high cost and underperforming, actively managed mutual funds;

v.    Failed to monitor the committees overseeing the Plan in the committees' monitoring of performance;

vi.    Failed to employ a proper process to appoint individuals with the knowledge and skill to determine, in view of overwhelming literature that actively managed mutual funds do not beat the market after fees, whether the funds chosen were likely to do so;

vii.    Caused the Plan, and its participants and beneficiaries, to pay the high costs of active investment management that provided no benefit to their long-term retirement savings;

viii.    Caused assets to be removed from the Plan, and the retirement savings of participants and beneficiaries, for the purpose of providing soft dollars to be used in undisclosed Revenue Sharing programs;

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

ix.   Caused the Plan to pay for fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants and beneficiaries;

x.   Charged fees and expenses to the Plan that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants;

xi.   Caused the Plan to pay fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants;

xii.   Failed to monitor the fees and expenses paid by the Plan and, by such failure, caused or allowed the Plan to pay fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants;

xiii.   Failed to capture Revenue Sharing monies and Additional Compensation Streams, as set forth below, for the benefit of the Plan;

xiv.   Failed to inform themselves of, and understand, the various methods by which vendors in the 401(k), financial and retirement industry collect payments and other revenues from 401(k) plans;

xv.   Failed to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of Plan participants;

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

xvi. Failed properly to inform, and/or disclose to, Plan participants the fees and expenses that are, or have been, paid by the Plan;

xvii. Failed to inform, and/or disclose to, Plan participants in proper detail and clarity the transaction fees and expenses which affect participants' account balances in connection with the purchase or sale of interests in investment alternatives;

xviii. Breached their fiduciary duties by failing to disclose that hidden and excessive fees were and are being assessed against Plan assets, and by failing to stop such hidden excessive fees;

xix. In charging, causing to be charged or paid, and failing to monitor the fees and expenses of the Plan, failed to exercise the care, skill, prudence, and diligence that a prudent person would when acting in like capacity and familiar with such matters;

xx. Caused and/or allowed fees and expenses to be paid by the Plan for purposes other than those allowed by ERISA;

xxi. Failed to employ a prudent process in their appointment of, among others, Frederick Grigsby, Aaron Whitley, Diane Featherstone, J. Michael Mendez, John Kelly, and Lillian Gorman to the Committee, to ensure that these individuals had the necessary skills and qualifications to oversee and run the Plan for the best interests of the Plan participants;

xxii. Failed to properly monitor, through a prudent process, the performance of, among others, Frederick Grigsby, Aaron Whitley, Diane Featherstone, J. Michael Mendez, John Kelly, and Lillian

- 9 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  Gorman to the Committee, to ensure these individuals were

2  overseeing and running the Plan for the best interests of the Plan

3  participants;

4

xxiii. By the conduct above and/or by other conduct set forth in this

5  Complaint, revealed in discovery and/or proven at trial, breached

6

7  their fiduciary and other ERISA-imposed obligations to the Plan,

8  Plan participants, and members of the Class;

9

xxiv. Are liable to the Plan and the Class for losses suffered as a result of

10  the breaches of their fiduciary and other ERISA-imposed

11  obligations; and

12

xxv. Are responsible to account for the assets and transactions of the

13  Plan and should be charged/surcharged for any transactions and

14

15  payments for which they cannot account or which were not proper

16  uses of Plan assets.

17  C.  **Typicality.** The Plan is comprised of a unitary trust corpus in which each

18  Plaintiff, and each Plan participant, has an interest.  The claims brought by the

19  Plaintiffs are typical of those of the absent Class members, in that:

20

21  i.  The Defendants owed the exact same fiduciary and other ERISA-

22  based obligations to each Plan participant and beneficiary, and each

23  member of the Class;

24  ii.  The Defendants' breach of those obligations constitutes a breach to

25  each participant and beneficiary, and each member of the Class;

26  iii.  To the extent that there are any differences in Class members'

27  damages, such differences would be a product of simple

28

- 10 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  mathematics based upon account balances in the Plan.  Such
2  minimal and formulaic differences are no impediment to class
3  certification.

   D.  **Adequacy of Representation.**  The Plaintiffs are adequate representatives of the absent Class members and will protect such absent Class members' interests in this litigation.  The Plaintiffs do not have any interests antagonistic to the other class members nor do they have any unique claims or defenses that might undermine the efficient resolution of the Class' claims.  Plaintiffs have retained competent counsel, versed in ERISA, class actions, and complex litigation.

26.  Class certification is also appropriate under Rule 23(b) and each subpart in that:

   A.  Pursuant to Rule 23(b)(1)(A), in the absence of certification, there is a risk of inconsistent adjudications with respect to individual class members;

   B.  Pursuant to Rule 23(b)(2), as set forth above, the Defendants have acted on grounds generally applicable to the Class as a whole; and

   C.  Pursuant to Rule 23(b)(3), as set forth above, common issues of law and fact predominate over any purely individual issues and thus a class action is superior to any other method for adjudicating these claims.

## FACTS

### The Plan

27.  As part of their compensation and benefits, Edison offers certain of its employees the opportunity to participate in the Plan.  The Plan is a "defined contribution plan," as defined in ERISA § 3(34), 29 U.S.C. § 1002(34), and contains or is part of an "eligible individual account

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

plan" under ERISA § 407(d)(3)(A), 29 U.S.C. §1107(d)(3)(A) . It is also a tax-qualified plan of the type popularly known as a "401(k) plan."

28.     All Plan assets are held in a Trust (the "Trust") established by SCEand the Plan's trustee. The fees and expenses of the Plan are paid from, and/or directly or indirectly reduce, the assets of the Trust. Plan participants and beneficiaries have an undivided beneficial interest in the Trust.

29.     According to the Plan's financial statements filed with the Department of Labor, upon enrollment in the Plan, participants may direct their contributions in one or more of the following investment fund options:

As of December 31, 2005 and December 31, 2004, all participants were able to choose from among 47 and 48 investment fund offerings, respectively.  As of December 31, 2005, these investment funds consisted of the following:

- Three Pre-Mixed Portfolios – Funds are invested in portfolios which include U.S. stocks, non-U.S. stocks and corporate and government bonds;

- Seven Institutional Funds – Funds are invested in a broad selection of asset classes; large and small U.S. stocks (including Edison International Common Stock), non-U.S. stocks and fixed income instruments; and

- Thirty Seven Mutual Funds – Funds are invested in a variety of retail mutual funds from multiple asset classes.

30.     According to the Plan's financial statements filed with the Department of Labor:

The Plan's investment in Edison International Common Stock amounted to approximately $1,324,221,000 and $922,975,000 as of December 31, 2005 and 2004, respectively.  Such investments represented approximately 41 percent and 35 percent of the Plan's total assets as of December 31, 2005 and 2004, respectively.

31.     If Plan participants do not designate upon enrollment the investment fund option into which his contributions are to be invested, all of their contributions and Edison's matching contributions are invested in the Edison International Stock Fund.

32.     Edison is obligated to pay the cost of administering the Plan, and repeatedly has represented that it does so, in its Forms 11-K, filed with the Securities and Exchange

- 12 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

Commission, stating that "[t]he Plan Sponsor pays the cost of administering the Plan, including the fees and expenses of the Trustee and record keeper."

33.    In addition, the 2000 and 2001 Plan Document states that "[t]he cost of the administration of the Plan will be paid by the Company."

34.    Further, according to the Plan's financial statements filed with the Department of Labor in 2003 (emphasis added):

> **Administrative and Investment Expenses**
> The Plan Sponsor pays the cost of administering the Plan, including fees and expenses of the Trustee and record keeper. **Such costs were not material to the Financial Statements of Plan taken as a whole for the year that ended December 31, 2003.** The fees, taxes and other expenses incurred by the Trustee or investment managers in making investments are paid out of the applicable fund. This includes brokerage fees for sales or purchases of Edison International Common Stock on the open market. No additional costs are incurred in connection with the sales of Edison International Common Stock within the trust or the transfer of assets between funds.
>
> Mutual funds pay fees to the Plan record keeper for administrative services to participants that would otherwise have to be provided by the mutual funds. The majority of fees received by the Plan record keeper are used to reduce the record keeping and communication expenses of the Plan.

35.    According to the Plan's financial statements filed with the Department of Labor in 2004:

> **Administrative and Investment Expenses**
> The Plan Sponsor pays the cost of administering the Plan, including fees and expenses of the Trustee and record keeper. The fees, taxes and other expenses incurred by the Trustee or investment managers in making investments are paid out of the applicable fund. This includes brokerage fees for sales or purchases of Edison International Common Stock on the open market. No additional costs are incurred in connection with the sales of Edison International Common Stock within the trust or the transfer of assets between funds.
>
> Mutual funds pay fees to the Plan record keeper for administrative services to participants that would otherwise have to be provided by the mutual funds. The majority of fees received by the Plan record keeper are used to reduce the record keeping and communication expenses of the Plan.

36.    According to the Plan's financial statements filed with the Department of Labor in 2005 (emphasis added):

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 13 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**Administrative and Investment Expenses**
The Plan Sponsor pays the cost of administering the Plan, including fees and expenses of the Trustee and record keeper. The fees, taxes and other expenses incurred by the Trustee or investment managers in making investments are paid out of the applicable fund. This includes brokerage fees for sales or purchases of Edison International Common Stock on the open market. No additional costs are incurred in connection with the sales of Edison International Common Stock within the trust or the transfer of assets between funds.

Mutual funds pay fees to the Plan record keeper for administrative services to participants that would otherwise have to be provided by the mutual funds. The majority of fees received by the Plan record keeper are used to reduce the record keeping and communication expenses of the Plan. **The return of these fees to the record keeper qualifies them as a party-in interest transaction. See Note 7 for a discussion of related party transactions.**

37.     At Note 7, "Related Party Transactions," the Plan's financial statements filed with the Department of Labor in 2005 states – for the very first time (emphasis added):

**Related Party Transactions**

The Money Market Fund was managed by State Street Bank and Trust Company, which also serves as the Plan's Trustee. As such, transactions in the Money Market Fund qualify as party-in-interest transactions. Fees earned by the Trustee in its capacity as fund manager for the Plan were $379,641 for 2005 and were reported as a reduction to investment income on the Statement of Changes in Net Assets Available for Plan Benefits.

The Plan's investment options include the Company's Common Stock as a fund option. State Street Global Advisors, an affiliate of State Street Bank and Trust Company, is the investment manager of the Edison International Common Stock Fund. As such, transactions in the Edison International Common Stock Fund qualify as party-in-interest transactions. Fees earned by State Street Global Advisors in its capacity as the investment manager of the Edison International Common Stock Fund were $158,436 for 2005 and were reported as a reduction to investment income on the Statement of Changes in Net Assets Available for Plan Benefits.

Various mutual funds refund to Hewitt Associates, the Plan's record keeper, certain marketing and communication (12-b1) fees they charge to investors in these funds. **Fees refunded to the record keeper were $1,214,795 for 2005 and were used to reduce the recordkeeping and communication expenses of the Plan incurred by the Plan Sponsor.**

38.     Plaintiffs are informed and believe that there has been no change over the past three years (or more) in the manner in which Mutual Funds "pay fees to the Plan record keeper for administrative services" – i.e. engage in Revenue Sharing, as discussed below.

- 14 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

39.     Although Defendants have caused the Plan to undertake party-in-interest transactions for the last several years in connection with these mutual fund payments to the Plan record keeper, it first disclosed these party-in-interest transactions in mid-2006 (when Defendants filed the Plans' 2005 financial statements with the Department of Labor).

40.     Moreover, although Defendants have repeatedly represented in the Plan's financial statements that Edison, as Plan Sponsor, "pays the cost of administering the Plan, including the fees and expenses of the Trustee and the record keeper," Defendants disclosures indicate that Plan participants and beneficiaries actually pay such costs through mutual funds' payment of fees to the record keeper – i.e. through hidden Revenue Sharing payments.

41.     By failing to monitor the official governmental reports being filed on its behalf by the Committee, Edison knowingly allowed the Committee to conceal material information from participants regarding these fees, as discussed more below.

42.     Simply stated, although assuring Plan participants that Edison pays for Plan administration, Defendants surreptitiously have caused Plan participants to pay such Plan administrative and record keeping costs though hidden Revenue Sharing arrangements.

**Defendants' Fiduciary Duties**

43.     Defendants are bound by ERISA's imposition of a fiduciary duty that has been characterized as "the highest known to law." Defendants' fiduciary obligations require that, at all times, they conduct themselves with the utmost good faith, loyalty and fidelity; act with the sole purpose of advancing the interests of the Plan, its participants and beneficiaries; scrupulously avoid all self-interest, duplicity and deceit; and fully disclose to, and inform participants and beneficiaries of, all material information.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

44.     Defendants' fiduciary obligations under ERISA require that they exercise the care, skill and diligence which a prudent expert would in the operation of a Plan with like character and aims.

45.     Defendants' fiduciary obligations under ERISA require that they discharge their duties with the exclusive purpose of providing benefits to Plan participants and beneficiaries and defraying the reasonable cost of administering the Plan.

46.     Defendants' fiduciary obligations under ERISA require them to ensure, at all times, that Plan assets are *never* used for the benefit of the employer; here, Edison.

47.     Defendants' fiduciary obligations under ERISA require them to scrupulously avoid any transaction in which Plan assets would be used by, or inure to the benefit of, a party in interest in connection with the Plan.

48.     Defendants have breached all of these fiduciary obligations.

## DEFENDANTS' MULTIPLE BREACHES OF FIDUCIARY DUTY

### Causing the Plan to Bear Unreasonable Expenses *And* Shifting Edison's Obligation to Pay Plan Costs to Participants

49.     Defendants have breached their fiduciary obligations by causing the Plan, and thus its participants and beneficiaries, to pay excess and unreasonable fees and expenses to Plan service providers.

50.     Defendants have caused the Plan to pay its service providers in a combination of two ways:

    A.  By direct disbursement from the Plan via "Hard Dollar" payments; and/or

    B.  Through hidden "Revenue Sharing" arrangements designed to collect "soft dollars" from Plan participants' accounts and use them to support the investment funds' revenue sharing programs.

- 16 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

51.    "Hard Dollar" payments are direct disbursements from the Plan to a Plan service provider.  The Plan's disclosed Hard Dollar payments are not the primary method by which the Plan's administrative and investment costs and expenses are paid.

52.    Instead of paying the Plan's administrative costs with Hard Dollar payments, Defendants have caused the Plan to bear such costs through undisclosed Revenue Sharing arrangements, which amounted to approximately $1.8 million in 2007 alone, according to Edison's financial filings with the Securities and Exchange Commission.

53.    In Revenue Sharing arrangements, Plan fiduciaries, like the Defendants here, select investment options ("Funds") which assess asset-based charges ("expense ratios") against Plan participants' retirement savings for the ostensible purposes of operating the Fund and managing Fund investments.  But in truth, such expense ratios are artificially inflated so as to collect *both* monies to be used for these ostensible purposes *and* "soft dollars" used to support the Fund's Revenue Sharing program.

54.    Based upon the ostensible reasons for which Fund expense ratios are imposed, Plan participants investing in the Fund are led to expect and believe that the fees collected from their savings will benefit them by paying proper costs of operating the Fund and managing its investments.

55.    This is false.  The Funds transfer the soft dollars collected via Revenue Sharing arrangements to other individuals and entities, sometimes for Plan purposes and sometimes for unrelated purposes.

56.    Here, the Plan's financial statements indicate that these soft dollars – collected from participants' retirement savings as part of undisclosed Revenue Sharing programs – have been, and are, transferred to other Plan administrative service providers *both*: (A) to pay the "cost of administering the Plan, including fees and expenses of the Trustee and the record keeper,"

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

which Edison is obligated to pay; *and* (B) to pay excess and unreasonable amounts to Plan service providers.

57.     As a result of these undisclosed Revenue Sharing arrangements, Plan service providers – and potentially others – receive either or *both* Hard Dollar payments from the Plan *and* additional soft dollars that the Fund "shares" with them.

58.     As a result, the total amount of fees and expenses that the Plan, and thus its participants and beneficiaries, were and are forced to bear are unreasonable and excessive.

59.     By imprudently appointing individuals to the Committee unqualified to act in the Plan participants' best interest, and by imprudently monitoring the Committee's actions that caused the Plan to pay administrative costs and expenses through undisclosed Revenue Sharing transfers, Edison thereby enabled the Committee to serve Edison's financial interest at the expense of the Plan and its participants and beneficiaries.  By selecting funds with Revenue Sharing programs, the Committee maximized the soft dollars collected by each Fund's Revenue Sharing program and, correspondingly, increased the soft dollars available to reduce Edison's liability to pay the Plan's administrative costs.  By failing to monitor the Committee's actions, and by allowing the Committee to enter into these contracts with service providers on behalf of the companies, EDISON violated its fiduciary duties to the Plan, and committed a prohibited transaction, by benefiting its financial interests at the expense of the Plans and its participants and beneficiaries.

60.     By causing the Plan, and its participants and beneficiaries, to pay administrative costs and expenses through undisclosed Revenue Sharing transfers, Defendants surreptitiously shifted Edison's obligation to pay Plan administrative expenses onto the Plan and its participants and beneficiaries.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 18 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

61.     By causing the Plan to pay administrative costs and expenses through undisclosed Revenue Sharing transfers, Defendants have concealed material information regarding: (1) the nature and purpose of the fees that are assessed against Plan participants' accounts; (2) to whom such fees are paid; (3) for what services they are paid; (4) whether the fees are reasonable for the services provided; (5) what services are being purchased and whether they are necessary; and (6) whether such payments involve conflicts of interest or prohibited transactions.

62.     By this conduct, Defendants have violated 29 U.S.C. § 1106(a)(1), in that they have caused the transfer of Plan assets to, or the use of Plan assets by, of for the benefit of, parties in interest.

63.     In addition, by this conduct Defendants have undertaken flagrant self-dealing and self-interested transactions: They have used, and continue to use, Plan assets – taken from participants' accounts as part of hidden Revenue Sharing programs – to reduce or eliminate Edison's obligation to pay the administrative costs of the Plan, which they have represented that Edison is paying.

**Failure to Capture Additional Compensation Streams For the Benefit of the Plan**

64.     Beyond collecting excessive fees from the Plan through Revenue Sharing programs, Plan service providers received additional, undisclosed compensation from their dealings with the Plan and Plan assets ("Additional Compensation Streams"). For example:

- consultants receive finders' fees from investment managers for the consultants' placement of Plan assets with a certain investment manager or mutual fund company;

- trustees or custodial banks perform cash sweeps of Plan accounts to capture cash before it is transferred to investment options and before it is transferred to

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 19 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

participants receiving benefit payments from the Plan, and earn interest on those cash holdings (commonly referred to as "float");

- investment managers, custodial banks, prime brokers, and/or mutual funds receive payments for lending securities, owned by the Plan, to third parties; and

- in connection with foreign investments, investment managers and mutual funds reap additional compensation from profiting on foreign currency exchange.

65. In a multi-billion dollar plan, like the Plan here, such Additional Compensation Streams can result in millions of dollars of funds available to the Plan.

66. Plan fiduciaries must understand and consider these Additional Compensation Streams in fulfilling their fiduciary obligations to ensure that the proceeds of Plan assets are captured to defray Plan expenses and are applied solely for the benefit of the Plan and its participants and beneficiaries.

67. Here, Defendants have failed to fully capture the Additional Compensation Streams for the benefit of the Plan and its participants and beneficiaries.

68. By appointing among others, Frederick Grigsby, Aaron Whitley, Diane Featherstone, J. Michael Mendez, John Kelly, and Lillian Gorman to the Committee, who were neither qualified nor competent enough to ensure that Additional Compensation Streams were captured for the benefit of the Plan, and by failing to monitor the Committee's efforts to do the same, Defendants Edison failed to meet their fiduciary obligations to the Plan participants by allowing Additional Compensation Streams that would benefit the participants to go uncaptured.

## The Inclusion Of More Than Three Dozen Retail Mutual Funds Among The Plan's Investment Options

69. The prudent and proper selection of investment options for the Plan is one of Defendants' core fiduciary obligations.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

70.     Here, Defendants included forty-seven investment options in the Plan in 2005, and more in prior years.  These investment options include three pre-mixed portfolios, seven institutional funds (including the Edison International Stock Fund), and thirty-seven retail mutual funds in 2005 (in 2004, the Plan included thirty-eight retail mutual funds, and forty in 2003).

71.     In 2005, the Plan held approximately $3.2 billion in assets.  In 2004, it held approximately $2.7 billion, and in 2003, $2.1 billion.

72.     In the financial and investments industry, a large institutional investor with billions of dollars, like the Plan, routinely can obtain lower prices for investment management and other services than can a retail investor with only thousands, or even a few million, dollars.

73.     Defendants – as fiduciaries of a multi-billion dollar retirement savings plan – had enormous bargaining leverage in the investment marketplace.  They squandered this leverage by subjecting the Plan and its participants to the high costs of retail/publicly-traded mutual funds and failing to provide investment options with significantly lower costs.

74.     As fiduciaries, Defendants were obligated to use the Plans' bargaining power to require that investment managers consider and provide separate low cost investment accounts, collective investment trusts, or common collective funds ("Separate Accounts") as Plan investment options.

75.     Separate Accounts are investment vehicles in which investment managers pool the assets of a large investor, like the Plan, into a private trust and manage them according to a stated investment objective (*i.e.* large cap, value, growth, balanced growth, small cap, international equity, etc.).

76.     However, Separate Accounts' operating expenses are substantially lower than those of mutual funds because they do not have to pay for advertising, marketing and distribution, nor do they have to maintain the liquidity required for trading in publicly-traded mutual funds.

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

77.    Separate accounts also avoid subjecting Plan participants to conflicts of interest inherent in large mutual fund organizations.  Mutual fund managers' own profit motive – driven by the assessment of fees against the fund's investments – conflict with investors' interest in reducing fees to maximize their returns.

78.    Defendants breached their fiduciary duties by subjecting the Plan to pay the excess and unnecessary fees of retail mutual funds

79.    In addition, Defendants' inclusion in the Plan of approximately fifty investment options, including more than three dozen retail mutual funds, is an abdication of their core fiduciary obligation to prudently select investment options for inclusion in the Plan.

80.    Rather than providing a menu of properly-vetted investment options that Plan participants are reasonably able to digest and analyze, Defendants have foisted upon Plan participants the burden of doing so themselves.

81.    Simply stated, in a manner that is antithetical to the purposes of ERISA, Defendants, rather than doing so themselves, have imposed upon Plan participants the obligation to expertly analyze and narrow the Plan's investment options down to a reasonable menu of prudent choices.  At the same time, Defendants have concealed information pivotal to performing such an analysis.

82.    Not surprisingly, Defendants' conduct has resulted in scatter-shot investment of Plan assets, with hundreds of million of dollars being distributed among retail mutual funds imposing top-rate *retail* expense ratios for lackluster performance over time. Especially in light of the high level fees assessed against Plan participants' accounts, the performance and quality of the Plan's investment options is, and has been, quite poor, and the underperforming investment options have been imprudent.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

83.     While this scatter-shot investment of hundreds of millions of dollars into retail mutual funds is detrimental to the Plan and its participants and beneficiaries, it has greatly benefited Edison.  By failing to appoint competent and qualified individuals to the Committee, and failing to ensure those individuals selected prudent investment options by employing a prudent process to monitor their work, Defendants Edison placed its own corporate financial interest ahead of the financial interests of the participants, and committed prohibited transactions under ERISA §406.

84.     The top-rate expense ratios of these retail mutual funds enable the collection of more soft dollars via their Revenue Sharing programs, which ensures that the Funds will have more soft dollars to transfer to the Plan's administrative service providers.  In turn, the Funds' larger payments to the Plan's administrative service providers reduce by larger amounts, or entirely eliminate, Edison's obligation to pay the administrative costs of the Plan.

**Subjecting The Plan to Active Investment Management Expenses**

85.     The vast majority of the Plan's investment options are, and have been, actively–managed retail mutual funds.  In actively-managed mutual funds, the investment manager seeks to outperform the Fund's benchmark.  This is more expensive than passive management, in which Fund managers conform their holdings to those of a particular benchmark, such as an index, which does not require paying for the selection of stocks, yet provides a market return.

86.     The inclusion of such actively-managed funds in a plan of this size is detrimental to the interests of the Plan and its participants and beneficiaries.  It repeatedly has been established that actively-managed funds rarely outperform such indexes on a risk-adjusted basis when held as long-term investments, and that the average actively-managed retail mutual fund underperforms the market after expenses.  The Plan's Funds here, after fees for active management, consistently underperformed the market.

- 23 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

87. Defendants Edison failed to employ a proper process to appoint individuals with the knowledge of the overwhelming established literature stating that actively-managed retail mutual funds rarely outperform such indexes on a risk-adjusted basis when held as long-term investments, and that the average actively-managed retail mutual fund underperforms the market after expenses. In doing so, and in failing to establish a prudent process to monitor the Committee to ensure that imprudent funds were not selected for the Plan, Edison violated its fiduciary duties to the Plan participants.

88. Defendants' inclusion in the Plan of these actively-managed mutual funds provided, and provides, no added value to participants while forcing them to bear substantial and unnecessary fees. Over time and on a risk-adjusted basis, the Plan's actively-managed Funds have under-performed, and are known to under-perform, market returns by at least the level of such fees.

89. By failing to appoint competent and qualified individuals to the Committee, and failing to ensure those individuals selected prudent investment options by employing a prudent process to monitor their work, Defendants Edison placed its own corporate financial interest ahead of the financial interests of the participants, and committed a prohibited transaction in violation of ERISA §406.

90. Including dozens of actively-managed retail funds as investment options in the Plan virtually guaranteed that participants and beneficiaries would receive less than a market return on their long-term retirement savings, when they could have received market returns. In doing so, Defendants breached their core fiduciary duties to the Plan.

- 24 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

### Fees and Cash Holdings in the Edison Stock Fund

91.     Through the Plan's Edison International Common Stock Fund (the "Edison Stock Fund"), participants can invest their 401(k) retirement savings in Edison International Common Stock ("Edison Stock").

92.     The Edison Stock Fund does not need to pay for investment management.  It holds an undiversified portfolio of Edison stock.  The Edison Stock Fund's fees should be minimal.  They are not.

93.     The Edison Stock Fund, as a retirement savings vehicle, is intended for long-term investing.  There is no need for it to hold substantial amounts of cash.

94.     The Edison Stock Fund's cash holdings reduce the Fund's return because the value of the cash remains static.

95.     Defendants breached their fiduciary duties by: (A) charging, and or allowing to be charged, excess and unreasonable fees and expenses to participants' retirement savings in the Edison Stock Fund; (B) maintaining and holding, causing to be maintained or held, or allowing to be maintained or held, excess cash in the Edison Stock Funds and thereby impairing participants' returns; and (C) obscuring, and/or misleading participants about, these facts.

### Defendants' Campaign of Nondisclosure, Concealment and Misrepresentation

96.     As set forth above, Defendants have misled Participants by representing that Edison pays the administrative costs of the Plan, when, in truth, Defendants have ensured that some – if not all – of such administrative costs are borne by the Plan, and its participants and beneficiaries, through hidden Revenue Sharing arrangements.

97.     As set forth above, Defendants have manipulated, disguised and misrepresented the nature of the fees and expenses incurred by the Plan, and by their inclusion of the Funds as

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

Plan investment options, placed their imprimatur on them as prudent vehicles for long-term retirement savings.

98.     As set forth above, Defendants have not disclosed, and/or have affirmatively concealed, a litany of material information including:

A.     That Defendants have undertaken, and continue, a long campaign of prohibited and self-interested transactions designed to shift to the Plan, and its participants and beneficiaries, Edison's obligation to pay "the cost of administering the Plan, including fees and expenses of the Trustee and record keeper;"

B.     That the Plan's size and asset value enabled Defendants to provide lower-priced investment options;

C.     That the excess and unreasonable fees assessed against the Plan, including fees paid for retail mutual funds and active investment management, were and are depriving participants of the opportunity to receive market returns;

D.     That the unreasonable and excessive fees and expenses assessed against their accounts would undermine substantially the value of participants' retirement savings over time;

E.     That Plan service providers were and/or are collecting excess fees from participants' accounts to provide soft dollars to support Revenue Sharing programs;

F.     That Plan service providers were and/or are receiving excess payments via Additional Compensation Streams;

G.     That monies collected via Revenue Sharing programs was, and is, available for the benefit of the Plan and its participants;

- 26 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

H.    That Additional Compensation Streams provided additional revenues to Plan service providers and was not captured for the benefit of the Plan;

I.    The amount of soft dollars, taken from participants' retirement savings and transferred among Plan service providers (and others) as part of undisclosed Revenue Sharing programs;

J.    The amount that Plan service providers received via Additional Compensation Streams;

K.    That the expense ratios charged in Plan investment options were and are inflated for the purpose of collecting soft dollars *not* used for the investment management and operation of the investment option/Fund, (*i.e.* the ostensible purpose for the imposition of such fees) *but rather* used to support undisclosed Revenue Sharing programs and to reduce or eliminate Edison's obligation to pay the administrative costs of the Plan;

L.    That the expense ratios of Plan investment options/Funds are inflated for the purpose of collecting soft dollars to be used for Revenue Sharing programs so that the *stated expense ratio is not the true and accurate cost of investing* in the investment option/Fund;

M.    Who is receiving Plan assets, derived from participants' accounts, through Revenue Sharing and/or Additional Compensation Streams;

N.    How much each service provider is paid with Plan assets, derived from participants' accounts, when Hard Dollar fees *and* Revenue Sharing *and* Additional Compensation Streams are considered;

O.    Whether the total amount paid to services providers (*i.e.* disclosed, Hard Dollar fees *combined with* Revenue Sharing payments *and* Additional

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 27 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

Compensation Streams) is reasonable in light of the services provided and incurred solely for participants' benefit;

P.      Whether Plan fiduciaries have forgone Revenue Sharing and/or Additional Compensation Streams available in connection with Plan investment options, and thereby unnecessarily increased the expenses which Plan participants otherwise must bear;

Q.      The true and accurate amount of recordkeeping and administrative fees that is assessed against participants' accounts in the Plan; in that Plan record keepers and administrators receive *both* the fees disclosed as Hard Dollar payments to them and *undisclosed* soft-dollar payments as part of Funds' Revenue Sharing programs;

R.      The true and accurate price of Plan investment options/Funds, in that the stated expense ratios of Plan investment options/Funds are overstated so as to provide soft dollars to be used in Revenue Sharing programs;

S.      The true and accurate amount of fees paid to investment managers *for actual investment management services* (*i.e.* the actual amount of investment management being purchased) in any Plan investment option/Fund; in that the investment management prices represented in the expense ratios of Plan investment options/Funds are overstated so as to include extra monies to provide soft dollars for Revenue Sharing programs;

T.      In actively-managed investment options/Funds, the actual amount of active management services that Plan participants are purchasing, in that the inclusion of undisclosed Revenue Sharing amounts in the expense ratios of actively-managed investment options/Funds renders participants incapable of knowing whether the

- 28 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1   higher fees charged by actively-managed Funds actually are used for active

2   investment management rather than as a vehicle to collect soft dollars to support

3   the Funds' Revenue Sharing programs;

4   U.      Whether hidden payments of Plan assets, through undisclosed Revenue

5   Sharing programs, are masking additional prohibited transactions and/or conflicts

6

7   of interests between or among Plan fiduciaries and service providers;

8   V.      That, especially in light of the high level fees assessed against Plan

9   participants' accounts, but also because of imprudent selection of investment

10  options and Edison's failure to monitor the Committee, the performance and

11  quality of the Plan's investment options is, and has been, quite poor.

12  W.      Whether services are being purchased that are unnecessary for the Plan;

13  X.      That participants' returns in the Edison Stock Fund consistently and

14  substantially lag behind those of Edison Stock;

15

16  Y.      That Defendants' conduct of causing or allowing the Edison Stock Fund to

17  maintain excess and unnecessary amounts of cash, and to charge excess fees and

18  expenses, has impaired the Plan's and Plan participants' returns in the Fund; and

19  Z.      The actual amount of fees and expenses associated with the Plan and Plan

20  participants' investment in the Edison Stock Fund.

21

22      99.     Because the Defendants failed and refused to provide them with this information,

23  and concealed this information from them, and because Edison failed to monitor the

24  communications being made to participants and deliberately allowed this information to be

25  concealed and hidden, Plan participants have lacked the information necessary for them: (a) to

26  understand and protect their interests in the Plan; (b) to have knowledge regarding the

27

28

- 29 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 39TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

Defendants' breaches of fiduciary duty; and (3) to have reason to believe they should make inquiry about those breaches and the facts underlying them.

100. Defendants know that Plan participants lack such information and knowledge.

101. In their fiduciary roles, Defendants are the parties with the information necessary to know and understand whether the participants' rights and protections under ERISA are being, or have been, violated. ERISA fiduciaries, such as Defendants here, have an affirmative obligation to provide full and accurate information to the Plan participants regarding the administration of the Plan.

102. As a result of all of the foregoing, including Defendants' campaign of non-disclosure, concealment and misrepresentation, Plaintiffs and all Plan participants and beneficiaries have been forced to pay excessive fees and expenses from their 401(k) accounts and have suffered financial losses and damages.

## COUNT I

### [Breach of Fiduciary Duty – ERISA §502(a)(2)]

103. Plaintiffs restate and incorporate the allegations contained in ¶¶ 1 through 102 as though fully set forth here.

104. As set forth in detail above, Defendants owe to the Plan, its participants and beneficiaries, and the Class extensive fiduciary duties including, without limitation:

A. To conduct themselves with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent ERISA professional fiduciary would in operating and administering a 401(k) plan the size and character of the Plan;

B. To perform their duties as Plan Sponsor, Administrator, and/or fiduciaries with the utmost loyalty and fidelity to the Plan and its participants and

- 30 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

beneficiaries, avoiding at all times conflicts of interest, self-interest, and duplicity;

C. To ensure, at all times, that Plan assets "shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan;"

D. To properly and prudently select investment alternatives for the Plan;

E. To ensure, at all times, that the Plan avoid self-interested and/or prohibited transactions;

F. To know and understand the fees and expenses charged to the Plan, and whether they were or are unreasonable or excessive;

G. To track and account for all transactions involving the Plan and Plan assets so as to ensure that Plan assets are retained, managed, and disbursed in compliance with the Plan Document and ERISA;

H. To ensure that all Revenue Sharing monies and Additional Compensation Streams are accounted for and captured for the benefit of the Plan;

I. To track and account for all transactions involving the Plan and Plan assets so as to ensure that Plan assets "never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan;"

J. To ensure that the fees and expenses incurred by the Plan are reasonable and incurred for the sole and exclusive benefit of Plan participants and beneficiaries;

- 31 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

K.  In entering into agreements with service providers to the Plan, to ensure that the payments from the Plan – whether they are direct or indirect – are reasonable for the services provided and made for the sole and exclusive benefit of Plan participants and beneficiaries;

L.  To ensure that the funds selected for the Plan do not underperform their appropriate relative benchmarks, resulting in losses to the Plan participants' retirement savings;

M.  To appoint qualified and competent individuals to operate and administer the Plan in a manner solely for the benefit of Plan participants and beneficiaries;

N.  To monitor and oversee the individuals tasked with operating and administering the Plan, to ensure that they are doing so in a manner solely for the benefit of Plan participants and beneficiaries;

O.  In operating and administering the Plan, to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of Plan participants and beneficiaries;

P.  In operating and administering the Plan, on an ongoing basis to monitor that the payments made by the Plan to service providers – whether they are direct or indirect – are and remain reasonable for the services provided and made for the sole and exclusive benefit of Plan participants and beneficiaries;

Q.  To inform itself of, and understand, the various methods by which vendors in the 401(k) industry collect payments and other revenues from 401(k) plans;

R.  To inform itself of trends, developments, practices, and policies in the retirement, financial investment and securities industry which affect the Plan;

SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

and to remain aware and knowledgeable of such trends, practices and policies on an ongoing basis;

   S.  To communicate with Plan participants and beneficiaries regarding the Plan honestly, clearly and accurately;

   T.  To affirmatively and without request provide Plan participants and beneficiaries with honest, accurate and complete information they need to understand their investments in the Plan; the management, risk, potential returns of such investments; and the fees and expenses incurred in connection with those investments;

   U.  To provide honest, accurate and complete information to Plan participants and beneficiaries regarding the costs associated with their various investment choices and directions; and

   V.  To ensure that the Edison Stock Funds' cash holdings and fees are appropriate for long-term retirement savings and do not impair participants' returns.

105.    As set forth in detail above, Defendants breached their fiduciary obligations to the Plan, Plan participants and beneficiaries, and the Class by, among other conduct to be proven at trial:

   A.  Failing to employ a prudent process in their appointment of plan fiduciaries, including, among others, Frederick Grigsby, Aaron Whitley, Diane Featherstone, J. Michael Mendez, John Kelly, and Lillian Gorman to the Committee, to ensure these individuals had the necessary skills and qualification to oversee and run the Plan for the best interests of the Plan participants;

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

B.  Failing to properly monitor, through a prudent process, the performance of plan fiduciaries, including, among others, Frederick Grigsby, Aaron Whitley, Diane Featherstone, J. Michael Mendez, John Kelly, and Lillian Gorman to the Committee, to ensure these individuals overseeing and running the Plan for the best interests of the Plan participants, and thereby knowing allowing the below breaches of fiduciary to occur;

C.  Failing to properly and prudently select plan investment options, including but not limited to the imprudent selection of sector funds, such as the T. Rowe Price Science & Technology Fund, making selections for self-interested reasons, and/or abdicating their responsibilities in this regard;

D.  Shifting to the Plan, and its participants and beneficiaries, Edison's obligation to pay the cost of administering the Plan, including fees and expenses of the trustee and record keeper, in violation of the Plan documents and other documents regarding the Plan including, but not limited to, the Plan's financial statements filed with the Department of Labor and the Plan's Form 11-k filed with the Securities and Exchange Commission;

E.  Squandering the Plan's enormous bargaining leverage in the large retirement plan marketplace by including as Plan investment options dozens of retail mutual funds which charged excessive fees, including a component for administration that was not being provided to the Plan by the mutual funds, and was unnecessary because administrative services were already being provided to the Plan.

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

F. Denying Plan participants and beneficiaries the opportunity to receive market returns over the long term and on a risk-adjusted basis by including, as Plan investment options, retail mutual funds;

G. Causing the Plan, and its participants and beneficiaries, to pay the high costs of active investment management that provided no benefit to their long-term retirement savings and provided less than market returns after fees;

H. Causing assets to be removed from the Plan, and the retirement savings of participants and beneficiaries, for the purpose of providing soft dollars to be used in undisclosed Revenue Sharing programs;

I. Causing the Plan to pay fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants and beneficiaries;

J. Failing to monitor the fees and expenses paid by the Plan and, by such failure, causing and/or allowing the Plan to pay fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants and beneficiaries;

K. By engaging in, and causing the Plan to engage in, prohibited transactions in violation of ERISA § 406;

L. By failing to know and understand the fees and expenses charged to the Plan, and whether they were or are unreasonable or excessive;

M. Failing to account for Revenue sharing monies and Additional Compensation Streams, including, but not limited to, float;

N. Failing to inform itself of trends, developments, practices, and policies in the retirement, financial investment and securities industry which affect the Plan; and failing to remain aware and knowledgeable of such trends, practices and

- 35 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1   policies on an ongoing basis, including, but not limited to, the failure to inform

2   itself of the common practice of including a higher return Stable Value Fund,

3   which provides liquidity and preservation of principal, as the Plan's most

4   conservative investment option, in lieu of a money market fund;

5

6   O.  Failing to inform itself of, and understand, the various methods by which

7   vendors in the 401(k) industry collect payments and other revenues from

8   401(k) plans;

9   P.  Failing to establish, implement, and follow procedures to properly and

10   prudently determine whether the fees and expenses paid by the Plan were

11   reasonable and incurred solely for the benefit of Plan participants and

12   beneficiaries;

13   Q.  Failing to communicate with Plan participants and beneficiaries regarding the

14   Plan honestly, clearly and accurately;

15

16   R.  Failing to use the Plan's bargaining power to obtain separate accounts,

17   commingled trusts, or commingled pools/funds in place of retail mutual funds,

18   which would have subjected Plan participants to significantly lower expenses;

19   S.  Allowing numerous retail mutual funds to be included as Plan investment

20   options, and thereby breaching their fiduciary duty to select reasonable and

21   prudent investment choices for the Plan and diluting the Plan's bargaining

22   power, based upon its asset size, to secure lower cost investment options;

23

24   T.  Failing to select prudent investment options in the best interest of the Plan

25   participants and beneficiaries, including but not limited to, the imprudent

26   selection of an underperforming money market fund which charged excessive

27

28

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

investment management fees, as well as failing to offer a Stable Value Fund as an investment option in lieu of a money market fund;

U.  Which investment options (a) underperformed and (b) were included for reasons other than those which a prudent fiduciary would consider in selecting investment option.

V.  Allowing Plan service providers, at the Plan's expense, to receive Additional Compensation Streams, including, but not limited to float, and failing to capture such Additional Compensation Streams for the benefit of the Plan;

W.  Allowing Plan service providers, the Plan's expense, to receive soft dollars removed from participants' accounts as part of undisclosed Revenue Sharing programs, and failing to capture such soft dollars for the benefit of the Plan;

X.  Failing to properly inform and/or disclose to Plan participants the total amount and nature of the fees and expenses that are, or have been, charged by each fund in the Plan and paid by the Plan;

Y.  Failing to discover, disclose and stop the charging of hidden and excessive fees to the Plan;

Z.  Improperly managing the Edison Stock Fund, and by causing and/or allowing the Edison Stock Fund to hold excessive and unnecessary cash and assess unnecessary and excessive fees so as to impair participants' returns; and

AA.  By the foregoing conduct, failing to exercise the loyalty, care, skill, prudence and diligence that a prudent person would when acting in like capacity and familiar with such matters.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

106.     As set forth in detail above, as a result of these breaches, the Plan, Plaintiffs, the Class, and the Plan's participants and beneficiaries have suffered financial losses and damages, and Defendants have been enriched by such practices.

107.     Pursuant to ERISA §§ 409 and 502(a), Defendants are personally liable to make good to the Plan for the losses it experienced as a result of Defendants' breaches of fiduciary duty.

108.     Pursuant to ERISA §§ 409 and 502(a), Defendants are personally liable for any other available and appropriate equitable relief, including prospective injunctive relief and declaratory relief, and attorney's fees.

## COUNT II:

### [Other Remedies for Breach of Fiduciary Duty – ERISA §502(a)(3)]

109.     Plaintiffs restate and incorporate the allegations contained in ¶¶ 1 through 108 as though fully set forth here.

110.     In addition to, and as an alternative to, the causes of action stated in Count I, Plaintiffs seek further relief pursuant to  ERISA § 502(a)(3), 29 U.S.C., § 1132(a)(3).

111.     Under ERISA §502(a)(3), a participant may enjoin any act which violates ERISA or may obtain other appropriate equitable relief to redress such violations or enforce the terms of ERISA.

112.     Defendants are the primary fiduciaries of the Plan and occupy a position of trust and confidence in connection with the Plan, the Plan's assets, and the Plan's participants and beneficiaries.

113.     Defendants have exclusive discretion and control over the Plan's assets and are strictly obligated to exercise that control "for the exclusive purposes of providing benefits to

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 38 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan."

114.     By accepting possession and control over Plan participants' assets, Defendants necessarily have also accepted the obligation to explain and account for every transaction, expenditure, application and distribution of such assets.

115.     Although *only* Plan participants and beneficiaries are entitled to Plan assets and to the benefit of Plan assets, in the absence of full and candid disclosure from Defendants, Plan participants and beneficiaries do not know, and have no means of knowing, how their assets have been managed, used and disbursed.

116.     Accordingly, Defendants occupy the position of a common law trustee in connection with the Plan, its assets, and its participants and beneficiaries.

117.     As set forth in detail above, Defendants have caused the Plan to pay – directly and via hidden Revenue Sharing transfers and hidden Additional Compensation Streams – excess fees and expenses to Plan service providers.

118.     As set forth in detail above, Defendants have used Plan assets for their benefit, and at the expense of the Plan.  They have caused the soft dollars collected from participants' accounts via undisclosed Revenue Sharing programs to be used to reduce or eliminate Edison's obligation to pay the cost of administering the Plan, including fees and expenses of the trustee and record keeper.

119.     Litigating and resolving these issues will involve identifying and reconciling multiple transfers, payments, and flows of Plan assets that occurred while such Plan assets were within Defendants' possession and control.

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

120.     Defendants, and not the Plaintiffs, are the entities which have and/or should have specific and detailed information regarding how Plan assets have been treated and disbursed in this regard.

121.     An accounting is a particularly appropriate equitable remedy in circumstances where, as here, the underlying action and accounts are so complicated that a normal action for a fixed sum may not be practical.

122.     In such an accounting, in light of their possession and control of Plan assets and information about how Plan assets have been applied and distributed, Defendants must bear the burden of proving all Plan transactions and their propriety.

123.     Accordingly, Plaintiffs respectfully request that the Court order the Defendants to render an accounting of all transactions, disbursements and dispositions occurring in, in connection with, and/or in respect of, the Plan and its assets.

124.     Plaintiffs respectfully request that the Court order that such an accounting include, without limitation, detailed and specific information regarding all fees and expenses incurred by the Plan and/or paid to third parties, whether paid directly by the Plan or indirectly transferred among Plan service providers or other third parties; all soft dollars collected through Revenue Sharing programs; and all Additional compensation Streams.

125.     Plaintiffs respectfully request that the Court charge/surcharge against the Defendants and in favor of the Plan all amounts involved in transactions which such accounting reveals were or are improper, excessive and/or in violation of ERISA.

126.     Plaintiffs respectfully request that the Court order Defendants to disgorge all amounts credited to Edison for all recordkeeping and administrative costs which Edison was obligated to pay and which Defendants assured Plan participants it would and/or did pay.

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

127.     Plaintiffs further seek injunctive and other appropriate equitable relief to redress the wrongs described above and to cause them to cease so that the Plan's participants and beneficiaries receive the full benefit of their retirement savings in the future.

WHEREFORE Plaintiffs, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully request that the Court:

- find and declare that the Defendants have breached their fiduciary duties as described above;

- find and adjudge that Defendants are personally liable to make good to the Plan all losses that the Plan incurred as a result of the conduct described above and to restore the Plan to the position it would have been in but for the breaches of fiduciary duty;

- award actual damages to the Plan in the amount of its monetary losses;

- impose a constructive trust on any monies by which the Defendants were unjustly enriched as a result of their breaches of fiduciary duty and cause the Defendants to disgorge such monies and return them to the Plan;

- remove the fiduciaries who have breached their fiduciary duties and/or enjoin them from future breaches of ERISA;

- require Defendants to render an accounting as set forth above;

- surcharge against Defendants and in favor of the Plan all amounts involved in transactions which such accounting reveals were or are improper, excessive and/or in violation of ERISA;

- permanently enjoin Defendants from breaching their fiduciary duties in each respect set forth in the Complaint;

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

1   • award to the Plaintiffs and the Class their attorneys fees and costs pursuant to

2   ERISA § 502(g);

3   • order costs and attorneys fees pursuant to ERISA § 502(g) and the common fund

4   doctrine;

5

6   • order equitable restitution or other available equitable relief against the

7   Defendants;

8   • order the payment of interest to the extent it is allowed by law; and

9   • grant any other and further relief the Court deems appropriate.

10

11

12   **PLAINTIFFS DEMAND A JURY TRIAL ON ALL COUNTS AND ISSUES SO TRIABLE.**

13

14   Respectfully Submitted,

15   SCHLICHTER, BOGARD & DENTON

16

17   By: _____
    Jerome J. Schlichter (054513)

18   Nelson G. Wolff
    Jason P. Kelly

19   100 S. 4th St., Suite 900
    St. Louis, Missouri 63102

20   (314) 621-6115
    (314) 621-7151 (Fax)

21   jschlichter@uselaws.com
    jkelly@uselaws.com

22   ATTORNEYS FOR PLAINTIFFS/
    CLASS REPRESENTATIVES

23   *Glenn Tibble, William Bauer, William Izral,*
    *Henry Runowiecki, Frederick Suhadolc,*

24   *Hugh Tinman, Jr.*

25

26

27

28

- 42 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

# PROOF OF SERVICE

I, Jason P. Kelly, declare:

I am a resident of the state of Missouri and over the age of eighteen years, and not a party to the within action; my business address is Schlichter, Bogard & Denton, 100 South Fourth Street, Suite 900, St. Louis, MO 63102.  On January 27, 2009, I served the within documents:

**APPLICATION TO FILE UNDER SEAL**

☒       by transmitting via Electronic Mail to the E-mail Addresses set forth below on this date.

Gary Tell
**O'Melveny & Myers LLP**
1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5300
Fax: (202) 383-5415
E-Mail: gtell@omm.com

Matthew P. Eastus
**O'Melveny & Myers LLP**
400 Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6679
Fax: (213) 430-6407
E-Mail: meastus@omm.com

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 15, 2009, at St. Louis, Missouri.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 43 -

**SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY**