1  ROBERT N. ECCLES (admitted *pro hac vice*)
   beccles@omm.com
2  GARY S. TELL (admitted *pro hac vice*)
   gtell@omm.com
3  O'MELVENY & MYERS LLP
   1625 Eye Street, NW
4  Washington, D.C. 20006-4001
   Telephone:  (202) 383-5300
5  Facsimile:  (202) 383-5414

6  AMY J. LONGO (SBN 198304)
   alongo@omm.com
7  MATTHEW P. EASTUS (SBN 187747)
   meastus@omm.com
8  O'MELVENY & MYERS LLP
   400 South Hope Street
9  Los Angeles, CA  90071
   Telephone:  (213) 430-6000
10 Facsimile:  (213) 430-6407

11 Attorneys for Defendants

12              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
13

14 GLENN TIBBLE, *et al.*,                Case No. CV07-05359 SVW (AGRx)

15              Plaintiffs,               **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN SUPPORT OF**
16     v.                                 **DEFENDANTS' MOTION TO**
                                          **EXCLUDE THE TESTIMONY OF**
17 EDISON INTERNATIONAL, *et al.*,        **STEVEN POMERANTZ PURSUANT**
                                          **TO FED. R. EVID. 702**
18              Defendants.
19

20

21                                        Hearing Date:  June 8, 2009
                                          Hearing Time: 1:30 p.m.
22                                        Ctrm:  6

23                                        Trial Date:  July 7, 2009

24                                        Bench trial/Non-jury docket
                                          The Honorable Stephen V. Wilson
25

26

27

28

1

# **TABLE OF CONTENTS**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

**Page**

I.    INTRODUCTION ............................................................................. 1

II.   STANDARDS GOVERNING EXPERT TESTIMONY ................................ 3

    A.   The Court Must Act As Gatekeeper To Determine If Plaintiffs Have Met Their Burden Of Establishing Admissibility ...................... 3

    B.   "Unsubstantiated Speculations And Subjective Beliefs" Do Not Constitute Reliable Expert Testimony ...................................... 3

    C.   Relevant Expert Testimony Must Assist The Trier Of Fact, "Fit" The Underlying Evidence, And Exclude Legal Conclusions .............. 4

    D.   A Witness Must Be Qualified As An Expert .............................. 4

III.  ARGUMENT ................................................................................. 5

    A.   Pomerantz's Testimony Is Unreliable And Irrelevant ...................... 5

        1.   Unsubstantiated Inferences Do Not Assist the Trier of Fact ................................................................................. 5

        2.   Pomerantz's "Ipse Dixit" Opinions Do Not "Fit" The Underlying Evidence .......................................... 6

        3.   Pomerantz Offers Impermissible Legal Conclusions ................ 7

    B.   Lacking Specialized Knowledge, Education, Experience or Training Regarding 401(k) Plans Or Fiduciary Responsibilities Pomerantz Is Unqualified To Opine The Plan ..................................... 8

    C.   Pomerantz's Damages Calculations Are Not "The Product Of Reliable Principles And Methods." ................................ 10

IV.  CONCLUSION ............................................................................ 11

18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4    *Aguilar v. Int'l Longshoremen's Union Local No. 10,*
         966 F.2d 443 (9th Cir.1992) ................................................................. 4

5    *Daubert v. Merrell Dow Pharms., Inc.,*
6         43 F.3d 1311 (9th Cir. 1995) ............................................................. 3, 4

7    *Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
         509 U.S. 579 (1993) ............................................................... 2, 3, 5, 8

8    *Diviero v. Uniroyal Goodrich Tire Co.,*
         919 F.Supp. 1353 (D. Ariz. 1996),
9         *aff'd,* 114 F.3d 851 (9th Cir. 1997) ...................................................... 3, 5

10   *Elsayed Mukhtar v. Cal. State Univ., Hayward,*
         299 F.3d 1053 (9th Cir. 2002) ............................................................ 3, 4

11   *Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.,*
         No-C-03-1431 SBA, 2006 WL 1390416 (N.D. Cal. May 18,  2006) ................. 4

12   *Gen. Elec. Co. v. Joiner,*
         522 U.S. 136 (1997) ......................................................................... 4, 7

13   *Gray v. Briggs,*
14        45 F. Supp. 2d 316 (S.D.N.Y. 1999) ....................................................... 8

15   *Hardin v. Ski Venture, Inc.,*
         50 F.3d 1291 (4th Cir. 1995) ................................................................. 9

16   *Hughes v. Unumprovident Corp.,*
         No. C07-4088 PJH, 2008 WL 4452140 (N.D. Cal. Oct. 3, 2008) ...................... 7

17   *In re Silicone Gel Breast Implants Products Liability Litigation,*
18        318 F.Supp.2d 879 (C.D. Cal. 2004) ....................................................... 4

19   *Kumho Tire Co. v. Carmichael,*
         526 U.S. 137 (1999) ............................................................................. 3

20   *Lust v. Merrell Dow Pharms., Inc.,*
         89 F.3d 594 (9th Cir.1996) .................................................................... 3

21   *McHugh v. United Serv. Auto. Ass'n,*
         164 F.3d 451 (9th Cir.1999) ............................................................... 4, 7

22   *Nichols v. Am. Nat'l Ins. Co.,*
         154 F.3d 875 (8th Cir. 1998) ............................................................. 4, 7

23   *Pell v. E.I. DuPont De Nemours & Co., Inc.,*
24        231 F.R.D. 186 (D. Del. 2005) ............................................................... 8

25   *Thomas J. Kline, Inc. v. Lorillard Inc.,*
         878 F.2d 791 (4th Cir. 1989) ............................................................... 10

26   *United States v. Arvin,*
         900 F.2d 1385 (9th Cir. 1990) ................................................................ 6

27

28

1

2

# TABLE OF AUTHORITIES
## (continued)

Page

*United States v. Hamling*,
    481 F.2d 307 (1973) .................................................................. 4

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) .................................................. 3

*United States v. Vallejo*,
    237 F.3d 1008 (9th Cir.2001),
    *amended by* 246 F.3d 1150 (9th Cir.2001) ........................... 4

*Westfed Holdings, Inc. v. U.S.*
    55 Fed. Cl. 544 (Fed. Cl. 2003) ............................................... 9

## STATUTES

29 U.S.C. § 1104(a)(1)(B) ............................................................ 9

## RULES

Fed. R. Evid. 104 .......................................................................... 4

Fed. R. Evid. 702 ................................................................. passim

## WEB MATERIALS

https://www.wellsfargo.com/investing/mutual_funds/
    morningstar_desc ..................................................................... 1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.     **INTRODUCTION**

Defendants move to exclude under Federal Rule of Evidence 702 the testimony and written report of plaintiffs' proffered expert, Steven Pomerantz ("Pomerantz").[1] Pomerantz offers two principal opinions in this case: (1) defendants imprudently included "high priced mutual funds" as investment options in the Edison 401(k) Savings Plan (the "Plan"), thereby putting their own interests above those of Plan participants; and (2) defendants imprudently included a money market fund in the Plan instead of a stable value fund.[2] Several types of damages flow from these allegedly imprudent acts. The inclusion of mutual funds allegedly damaged the Plan in the amounts of: (1) $11.4 million for excess fees charged by the mutual funds; (2) $86.7 million for losses due to underperformance of the T Rowe Science & Technology Fund ("T Rowe Fund"); and (3) $187.2 million for mutual fund underperformance.[3] The inclusion of a money market rather than a stable value fund allegedly caused the following damages: (1) $2.1 million in excess fees; and (2) $39.3 million for underperformance by the money

---

[1] "Defendants" refers to defendants Edison International, Southern California Edison Company, Southern California Edison Company Benefits Committee (incorrectly named by Plaintiffs as the "Edison International Benefits Committee"), Edison International Trust Investment Committee, Edison International Trust Investment Committee Chairman's Subcommittee, Secretary of the Southern California Edison Company Benefits Committee, Southern California Edison Company's Vice President of Human Resources, and Manager of Southern California Edison Company's HR Service Center.

[2] Although there is no universal definition of the composition of a stable value fund (See Peavy Report ¶¶ 52-53), one description is as follows: "Stable-value portfolios seek to provide income while preventing price fluctuations. The most common stable-value portfolios invest in a diversified portfolio of bonds and enter into wrapper agreements with financial companies to guarantee against fluctuations in their share prices." See https://www.wellsfargo.com/investing/mutual_funds/ morningstar_desc, accessed May 15, 2009.)

[3] The $187.2 million calculation encompasses the $11.4 million for the excess fees and the $86.7 million for the T Rowe Fund. In addition to these numbers, Pomerantz attributes an addition $2.6 million in damages to defendants' failure to negotiate breakpoints into their fee schedules with Frank Russell Trust Company ("FRTC"), the manager of several Plan investment options (bringing the "excess fees" claim from $11.4 million to $14 million) (Longo Decl., Ex. 2 at SCE004601.)

MEMO OF POINTS & AUTHORITIES ISO
MOTION TO EXCLUDE TESTIMONY OF
STEVEN POMERANTZ

1  market fund.  (*See* Declaration of Amy J. Longo ("Longo Decl."), Ex. 1 at

2  Summary.)

3       The Court should exclude Pomerantz's opinions because they fail to meet the

4  standards for admissibility of expert testimony.  Rule 702 and *Daubert v. Merrell*

5  *Dow Pharmaceuticals*, *Inc*. ("*Daubert I*"), 509 U.S. 579, 113 S.Ct. 2786, 125 L. Ed.

6  2d 469 (1993) require that expert opinions be reliable and relevant.  Pomerantz's

7  opinions are neither.  His testimony is based on hypotheses regarding defendants'

8  intent, rather than evidence.  For example, Pomerantz speculates that defendants'

9  "primary motivation" for including mutual funds in the Plan was to benefit

10  themselves by receiving "kickbacks" in the form of revenue sharing.  (Longo Decl,

11  Ex. 1 ¶¶ 13, 15, 35, 37).  Yet he cites no basis for this allegation.  His testimony also

12  features "ipse dixits" - conclusions based only on Pomerantz's "say so," rather than

13  on any fact.  For example, his opinions on how Plan participants interpreted

14  defendants' disclosures come from only his own understanding of those

15  disclosures.  (*Id.*, Ex. 3 at 8:7-11, 52:12-20.)

16       Pomerantz relies on these unfounded conclusions to offer impermissible

17  legal opinions, stating, for example, that defendants' selection of funds that

18  engaged in revenue sharing was "a prohibited transaction and very serious breach

19  of fiduciary duties by Edison fiduciaries" (*Id.*, Ex. 1 ¶ 13), and omission of a stable

20  value fund as an alternative to the money market fund was "a serious breach of their

21  fiduciary responsibility." (*Id.* ¶ 62.)  Legal opinions about key issues the Court will

22  decide in this case are not admissible.

23       Pomerantz's testimony should further be excluded because he lacks the

24  qualifications to offer expert opinions on the conduct of 401(k) plan fiduciaries.

25  His most germane experience derives from his expert witness work for plaintiffs'

26  counsel in other cases.  Finally, his damages estimates are unsound

27  methodologically and overbroad.

28       For these reasons, the Court should exclude his testimony and report in their

MEMO OF POINTS & AUTHORITIES ISO MOTION TO EXCLUDE TESTIMONY OF STEVEN POMERANTZ

1   entirety.

2   **II.   STANDARDS GOVERNING EXPERT TESTIMONY**

3           **A.   The Court Must Act As Gatekeeper To Determine If Plaintiffs Have Met Their Burden Of Establishing Admissibility.**

4

5           Under Rule 702 and *Daubert*, the District Court must act as "gatekeeper" to

6   determine whether expert testimony is admissible.  *Daubert I*, 509 U.S. at 589-90.

7   The proponent of the expert testimony has the burden of establishing admissibility.

8   *Lust v. Merrell Dow Pharms., Inc.,* 89 F.3d 594, 598 (9th Cir.1996); *see Daubert v.*

9   *Merrell Dow Pharms., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1315 (9th Cir. 1995)

10  ("[T]he party presenting the expert must show that the expert's findings are based

11  on sound science, and this will require some objective, independent validation of

12  the expert's methodology.").  To be admissible under Rule 702, the testimony must

13  be both relevant and reliable.  *See Elsayed Mukhtar v. Cal. State Univ., Hayward*,

14  299 F.3d 1053, 1063 (9th Cir. 2002).

15          **B.   "Unsubstantiated Speculations And Subjective Beliefs" Do Not Constitute Reliable Expert Testimony.**

16

17          Expert testimony is reliable under Rule 702 if it "relate[s] to scientific,

18  technical or other specialized knowledge, [but] does not include unsubstantiated

19  speculation and subjective beliefs."  *Diviero v. Uniroyal Goodrich Tire Co ,* 114

20  F.3d 851, 853 (9th Cir. 1997) (citing *Daubert I,* 509 U.S. at 590).  The trial court

21  has broad discretion in determining whether an expert's testimony is reliable and

22  "deciding *how* to test an expert's reliability." *United States v. Hankey,* 203 F.3d

23  1160, 1168 (9th Cir. 2000) (citations omitted).  Factors include: whether the

24  expert's theory or technique has been subjected to peer review and publication;

25  whether the theory or technique is generally accepted in the relevant scientific

26  community; whether the expert is proposing to testify about matters growing

27  directly out of independent research he or she has conducted or whether the opinion

28  was developed expressly for purposes of testifying; and whether the expert has

1    adequately accounted for obvious alternative explanations.  *See Daubert I,* 509 U.S.

2    at 593-94; *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167,

3    1171, 143 L. Ed. 2d 238  (1999); Fed. R. Evid. 702 Advisory Committee's Notes to

4    2000 Amendments; *In re Silicone Gel Breast Implants Products Liability*

5    *Litigation*, 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004).

6           **C.      Relevant Expert Testimony Must Assist The Trier Of Fact, "Fit"**
             **The Underlying Evidence, And Exclude Legal Conclusions.**
7

8           Expert testimony is only relevant if it is "helpful" to the trier of fact, meaning

9    it does not "draw[] inferences or reach[] conclusions within the [trier of fact's]

10   competence or within an exclusive function of the [trier of fact]."  *Nichols v. Am.*

11   *Nat'l Ins. Co.,* 154 F.3d 875, 883 (8th Cir. 1998); *see also United States v. Vallejo,*

12   237 F.3d 1008, 1019 (9th Cir.2001) (expert testimony should address issues

13   "beyond the common knowledge of the average layperson.").  This requires a "fit"

14   between the underlying data and the expert's opinion:  opinions connected to the

15   underlying data only by *ipse dixit* must be excluded.  *See Daubert II*, 43 F.3d at

16   1315; *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 519, 139 L. Ed. 2d 508

17   (1997) (opinions may be excluded if "there is simply too great an analytical gap

18   between the data and the opinion proffered.")  Legal opinions by experts are not

19   relevant.  *See, e.g., Elsayed Mukhtar*, 299 F.3d at 1066 n. 10 (citing *McHugh v.*

20   *United Serv. Auto. Ass'n,* 164 F.3d 451, 454 (9th Cir.1999)); *Aguilar v. Int'l*

21   *Longshoremen's Union Local No. 10,* 966 F.2d 443, 447 (9th Cir.1992).

22          **D.      A Witness Must Be Qualified As An Expert.**

23          Under Rules 104 and 702 of the Federal Rules of Evidence, the Court must

24   also determine whether Pomerantz is a qualified expert.  *See Daubert*, 43 F.3d at

25   1315 ("The question of admissibility only arises if it is first established that the

26   individuals whose testimony is being proffered are experts in a particular scientific

27   field."); *United States v. Hamling*, 481 F.2d 307, 318 (1973) (the "initial question"

28   is "whether an expert has sufficient competency and qualifications to testify");

1    *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.,* No-C-03-1431 SBA, 2006

2    WL 1390416, at *3 (N.D. Cal. May 18,  2006) ("As a preliminary matter, this Court

3    must first determine whether [the witness] is a qualified expert before his testimony

4    can be deemed admissible.")  Under Rule 702, an expert may be qualified by virtue

5    of "knowledge, skill, experience training, or education."  This standard is broad but

6    exacting: a court should "exclude an expert who does not have the appropriate

7    experience, education or training to offer a helpful opinion with regard to

8    controverted issues."  *Diviero v. Uniroyal Goodrich Tire Co.*, 919 F. Supp. 1353,

9    1355 (D. Ariz. 1996), *aff'd*, 114 F.3d 851 (9th Cir. 1997).

10   **III.   ARGUMENT**

11           **A.      Pomerantz's Testimony Is Unreliable And Irrelevant.**

12                   **1.      Unsubstantiated Inferences Do Not Assist the Trier of Fact.**

13           Pomerantz engages in liberal speculation about defendants' motives with

14   respect to the inclusion of mutual funds and the money market fund in the Plan.

15   The hypotheses central to his report are that:  (1) defendants' "primary motivation"

16   to include mutual funds in the Plan was to benefit themselves by receiving

17   "kickbacks" in the form of revenue sharing.  (Longo Decl, Ex. 1 ¶¶ 13, 15, 35, 37);

18   (2) defendants knew that the number of mutual funds they were offering in the Plan

19   was excessive (*Id.* ¶ 42); (3) defendants knew the mutual funds were

20   underperforming because they placed a percentage of them on watch lists (*Id.* ¶ 39);

21   and (4) defendants were motivated to offer the T Rowe Fund because the entire

22   revenue sharing payment for that fund went to the benefit of Edison. (*Id.* ¶ 48).

23           The Court should exclude Pomerantz's testimony because his opinions

24   regarding defendants' purported motives are little more than conjecture.  Under

25   Rule 702, reliable expert testimony must "relate[s] to scientific, technical or other

26   specialized knowledge," ***without*** "includ[ing] unsubstantiated speculation and

27   subjective beliefs."  *Diviero v. Uniroyal Goodrich Tire Co.,* 114 F.3d 851, 853 (9th

28   Cir. 1997) (citing *Daubert I,* 509 U.S. at 590).  Pomerantz's unfounded

1   speculations do not meet this standard.

2       Moreover, Pomerantz's proffered opinions will not "assist" the Court as the

3   trier of fact.  Rather than imparting any specialized knowledge, Pomerantz seeks

4   merely to substitute his own judgment for the Court's, to draw inferences from the

5   evidence about defendants' intent with respect to the investment options in the

6   Plan.  This is not the proper role for an expert.  *See United States v. Arvin*, 900 F.2d

7   1385, 1388-89 (9th Cir. 1990) (striking expert from testifying on whether certain

8   photographs were "lascivious" because such testimony would "usurp the function

9   of the jury" which "d[id] not need an expert" to decide whether pictures are

10  "lascivious.").

11          **2.    Pomerantz's "Ipse Dixit" Opinions Do Not "Fit" The**
                   **Underlying Evidence.**
12

13      Many of Pomerantz's opinions are inadmissible "ipse dixits,"

14  conclusions connected to the underlying evidence only through the "say so" of

15  Pomerantz.  Pomerantz's "ipse dixits" most directly impair his opinions on

16  defendants' disclosures, as to which he claims that revenue sharing was "hidden

17  from full disclosure to plan participants," (Longo Decl., Ex. 1 ¶ 13) and that "the

18  state of participants on [the issue of revenue sharing] is one of confusion."  (*Id.*, Ex.

19  3 at 45:25-46:5; *see also* 46:7-8, 50:10-14, 57:19-20, 59:5-11).

20      In forming his views, Pomerantz never spoke to any of the named plaintiffs

21  or any other Plan participants.  (*Id.* at 8:7-11.)  When asked for the bases of his

22  "expert" opinion that Edison's disclosures were confusing, Pomerantz testified:

23          I consider myself an expert in English.  I can read.  I think that I
24          can also speak to how somebody could interpret documents. If I
            read a document and I find it confusing, then I certainly believe
25          that someone who is an employee at a company, who is a
            participant in a plan, who spends significantly less time than I do-
26          -I mean, I spend hours a day reading this type of material, and if
            something is confusing to me, I think it's definitely going to be
27          confusing to someone who doesn't have the luxury to spend hours
28

a day reading it.

(*Id.* at 52:12-20).

His literacy notwithstanding, Pomerantz's opinions about Edison's disclosures are classic "ipse dixit":  the gulf between his views and any actual evidence is far too wide to satisfy Rule 702.  *See Gen. Elec. Co. v. Joiner,* 522 U.S. at 146.  Clearly, the Court does not need Pomerantz's assistance to interpret the English language.  *See Nichols v. Am. Int'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998)  (expert testimony is not admissible it if it "reach[es] conclusions within the [trier of fact's] competence.").

### 3.     Pomerantz Offers Impermissible Legal Conclusions.

This Court must also strike Pomerantz's opinions that merely state legal conclusions.  "It is well-settled that allowing an expert to opine on an issue of law usurps the authority of the court."  *See Hughes v. Unumprovident Corp.*, No. C07-4088 PJH, 2008 WL 4452140, at *6 (N.D. Cal. Oct. 3, 2008).  An expert's role is "to interpret and analyze factual evidence and not" "to provide legal meaning." *McHugh v. United Serv. Auto. Ass'n,* 164 F.3d 451, 454 (9th Cir.1999).

Here, Pomerantz opines, *inter alia*, that:  (1) defendants' inclusion of mutual funds as investment options that engaged in revenue sharing was "a blatant violation of [their] duty to operate the plan for the sole purpose of plan participants" (Longo Decl., Ex 1. ¶ 21); (2) the conflict of interest in selecting funds for their benefit to Edison rather than for their benefit to participants was "a prohibited transaction and very serious breach of fiduciary duties by Edison fiduciaries" (*Id.* ¶ 13); (3) offering choice to the participants was "imprudent" (*Id.* ¶¶ 17, 46); (4) defendants' decision to freeze the T Rowe Fund was an "egregious breach of fiduciary duty" (*Id.* ¶ 49); and (5) defendants' offering the money market fund was "imprudent" and their failure to consider a stable value fund as an alternative was "a serious breach of their fiduciary responsibility." (*Id.* ¶ 62.)

MEMO OF POINTS & AUTHORITIES ISO MOTION TO EXCLUDE TESTIMONY OF STEVEN POMERANTZ

1   Among the legal issues to be decided by this Court at trial are:  (1) whether

2   defendants engaged in a "prohibited transaction" under ERISA by including mutual

3   funds in the Plan that engaged in revenue sharing; and (2) whether defendants

4   breached their fiduciary duties by:  (a) offering a broad range of investment

5   choices; (b) offering the T Rowe Fund; and (c) offering a money market fund

6   instead of a stable value fund.  Pomerantz's opinions tie directly to the very issues

7   before the Court in this case -- and only the Court, not Pomerantz -- can make these

8   determinations.  The Court should strike his testimony under Rule 702.

9   **B.   Lacking Specialized Knowledge, Education, Experience or
       Training Regarding 401(k) Plans Or Fiduciary Responsibilities
10      Pomerantz Is Unqualified To Opine The Plan.**

11   In addition to the failings of his opinions themselves, Pomerantz's testimony

12   should be excluded because his only experience analyzing fiduciary roles and

13   prohibited transactions comes from his expert witness work for plaintiffs' counsel

14   in other cases.  (*See id.*, Ex. 3 at 26:18-24, 32:24-33:10.)  Pomerantz lacks the

15   specialized knowledge, training and experience to judge the conduct of Edison's

16   fiduciaries.  *See Gray v. Briggs*, 45 F. Supp. 2d 316, 323-25 (S.D.N.Y. 1999)

17   (barring expert who sought to testify about "how a reasonable investor would have

18   managed the [pension] Plan's portfolio" where the witness's expertise lay

19   "principally in the securities industry"); *Pell v. E.I. DuPont De Nemours & Co.,*

20   *Inc.*, 231 F.R.D. 186, 192 (D. Del. 2005) ("Expert testimony can only be received

21   from someone who has specialized knowledge or training sufficient to qualify him

22   to opine on an issue within his field of expertise, and the expert's opinion must be

23   confined to that field.").

24   Pomerantz claims to be an expert on 401(k) plans because he has

25   professional experience doing investment management consulting and research.

26   (*See* Longo Decl., Ex. 1 at pp. 32-33.)  Yet he admits that he has never managed

27   money on behalf of a 401(k) plan sponsor and has never been responsible for

28   selecting options for a 401(k) plan fiduciary.  (*Id.*, Ex. 3 at 9:1-8, 21:16-18).  When

1    asked why he considers himself an expert in interpreting 401(k) plan documents,

2    Pomerantz testified: " To the extent that somebody pays me to basically read it and

3    offer them advice on it, and that they modify their behavior based upon things that I

4    say, I think that makes me an expert." (*Id.* at 34:12-15.)  But neither *Daubert* nor

5    Rule 702 contemplates that a witness can be qualified as an expert simply because

6    someone pays him for his opinion.

7         Pomerantz's failure to consider the actions of similarly situated 401(k) plans

8    also highlights his lack of expertise.  ERISA contemplates that in discerning

9    whether a 401(k) plan fiduciary has acted prudently, the conduct of other fiduciaries

10   "engaged in an enterprise of a like character and with like aims" is directly relevant.

11   29 U.S.C. § 1104(a)(1)(B).  Although he criticized the addition of mutual fund

12   options to the Plan's line up, testifying that choice is a "bad thing," he was both

13   unaware of and disinterested in evidence that similar plans offer a similar choice of

14   options to their participants. (Longo Decl., Ex. 3 at 89:18-20, 126:9.)   When asked

15   whether he considered whether other large 401(k) plan offer mutual funds in their

16   lineups, Pomerantz responded "I don't think what other plans are doing speaks at all

17   to the prudence of what Edison is doing."  (*Id*. at 141:22-142:5.)  He also testified

18   that he did not see why it was relevant if other large 401(k) plans offer sector funds

19   or money market funds in determining that defendants' decisions to do so were

20   imprudent.  (*Id.* at 149:3-11, 171:12-172:12.)   Pomerantz's lack of understanding

21   about customary fiduciary conduct disqualifies him as an expert.

22         In fact, Pomerantz's most pertinent experience derives from his testimony for

23   Schlichter, Bogard & Denton in other cases.  Pomerantz testified that he has never

24   been hired to examine fiduciary breaches and prohibited transactions "outside of the

25   litigation context."  (*Id.* at 32:24-33:10.)  He also explained that only Schlichter,

26   Bogard & Denton has ever retained him to provide "401(k) analysis."  (*Id.* at 26:18-

27   24, Ex. 1 at pp. 34-35.)  Testifying for plaintiffs' counsel does not qualify him as an

28   expert. *Westfed Holdings, Inc. v. United States*, 5 Fed. Cl. 544, 573 (Fed. Cl. 2003),

1    *aff'd in part and reversed in part on other grounds*, 407 F.3d 1352 (Fed. Cir. 2005)

2    ("The court does not regard accumulated experience in testifying in other cases as

3    in itself proof of expertise relevant to this case."); *Hardin v. Ski Venture, Inc.*, 50

4    F.3d 1291, 1296 (4th Cir. 1995) ("Testifying as an expert in other ski accident cases

5    did not, contrary to plaintiff's assertion, qualify [the witness] as an expert on this

6    subject."); *Thomas J. Kline, Inc. v. Lorillard Inc.*, 878 F.2d 791, 800 (4th Cir. 1989)

7    ("Although it would be incorrect to conclude that [the witness's] occupation as a

8    professional expert alone requires exclusion of her testimony, *it would be absurd to*

9    *conclude that one can become an expert simply by accumulating experience in*

10    *testifying.")* (emphasis added).

11
12    **C.**    <u>**Pomerantz's Damages Calculations Are Not "The Product Of Reliable Principles And Methods."**</u>

13    Rule 702 requires that expert opinions be "the product of reliable principles

14    and methods."  Pomerantz's damages calculations fail to meet this standard.[4]  In

15    arriving at his determination that mutual funds cost the Plan $11.4 million in excess

16    fees and $187.2 million in underperformance, Pomerantz "mapped" each mutual

17    fund into a "corresponding" or "appropriate" FRTC fund that is also part of the

18    Plan.  (*See* Longo Decl., Ex. 3 at 68:21-24, 83:7-10.)  He then determined what the

19    fees and performance would have been for the "appropriate" FRTC funds had the

20    assets been invested in them instead of the mutual funds.  (*See id.* at 71:9-16.)  A

21    significant problem with Pomerantz's method is there are many mutual funds in the

22

23    [4] All of Pomerantz's damages calculations are also too broad.  He starts tabulating

24    them on December 31, 1999 and covers the next eight years through the end of 2007.  (*See* Longo Decl., Ex. 4; Ex. 2 at 117:22-118:9.)  The statute of limitations

25    in this case is at most six years, began running on August 16, 2001, and may be three years on some claims.  (*See* Section VI of Memorandum of Points &

26    Authorities in Support of Defendants' Motion for Summary Judgment, filed May 18, 2009.)  Thus, any damages calculations should begin on that date and cover

27    only the next six years.   Pomerantz testified that his damages figures would be lower if he calculated them in accordance with ERISA's statute of limitations.

28    (*See* Longo Decl., Ex. 2 at 118:17-22.)

MEMO OF POINTS & AUTHORITIES ISO MOTION TO EXCLUDE TESTIMONY OF STEVEN POMERANTZ

1  Plan that do not have a "corresponding" or "appropriate" FRTC fund.  (*See id.* at

2  90:11-15.)  For example, Pomerantz compared the Fidelity Real Estate Investment

3  mutual fund to a small cap mutual fund, even though the two are not comparable

4  investment options. (Longo Decl. ¶ 6, Ex. 3 at 148:14-16).  Pomerantz's unreliable

5  and self-serving methodologies are yet another reason to exclude his testimony.

6  **IV.    CONCLUSION**

7         For the foregoing reasons, defendants respectfully request that his Court

8  enter an order excluding Pomerantz's testimony and report in their entirety.

9

10  Dated:        May 18, 2009                    Respectfully submitted:

11                                                 /s/ Robert N. Eccles

12                                                O'MELVENY & MYERS LLP
                                                  Robert N. Eccles
13                                                1625 Eye Street, NW
                                                  Washington, D.C. 20006-4001
14                                                Telephone:  (202) 383-5300
                                                  Facsimile:  (202) 383-5414
15
16                                                 Attorneys for Defendants Edison
                                                   International, Southern California
17                                                 Edison Company, Southern California
                                                   Edison Company Benefits Committee
18                                                 (incorrectly named by Plaintiffs as the
                                                   "Edison International Benefits
19                                                 Committee"), Edison International
                                                   Trust Investment Committee, Edison
20                                                 International Trust Investment
                                                   Committee Chairman's Subcommittee,
21                                                 Secretary of the Southern California
                                                   Edison Company Benefits Committee
22                                                 (incorrectly named by Plaintiffs as the
                                                   "Secretary of the Edison International
23                                                 Benefits Committee"), Southern
                                                   California Edison Company's Vice
24                                                 President of Human Resources, and
                                                   Manager of Southern California Edison
25                                                 Company's HR Service Center.

26  LA2:885608.3

27

28